UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CHRISTINE CRUZ and STEVEN FOSTER, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>THE MOSAIC COMPANY, YES COMPANIES WFC LLC, and CHC VI LTD.,<br><br>         Defendant. | Civil Action No. _____<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs bring this civil action on their own behalf and on behalf of the classes they seek to represent to obtain damages, both compensatory and punitive, injunctive relief, and costs of suit from Defendants, and complain and allege, as follows:

## INTRODUCTION

1. This is a civil action to secure redress from The Mosaic Company for damages suffered by members of the putative classes defined below (the "Class Members") as a result of the contamination of their property by the phosphate mining, pollution, hazardous waste disposal and related actions of Mosaic, which subsequently led to home sales and real property leases of contaminated land in the Angler's Green and Paradise Lakes communities located in Mulberry, Polk County, Florida (the "Class Area") to Class Members. Plaintiffs also seek damages against Defendants CHC VI Ltd. and Yes Companies WFC LLC (collectively the "Owner Defendants"), which are the current owners and possessors of Angler's Green and Paradise Lakes, respectively, for leasing defective lots in the Class Area to Class Members without warning of, or disclosing,

the radiation contamination and hazardous substances it knew, or should have known, existed on and permeated the land located in the Class Areas.

2.     Plaintiffs and Class Members have been exposed to hazardous substances, including, but not limited to, gamma radiation, released as a result of Mosaic's conduct in its phosphate mining operations, its polluting of and waste disposal on the mined lands, and its incomplete remediation of such mined lands, including for the ultimate use as residential real estate.

3.     Under Florida law, mining companies are required to restore former mining lands in a manner that returns the land to its original condition prior to mining, mining waste disposal or mining operations. Ch. 378, Fla. Stat. & Ch. 62C-16., Fla. Admin. Code.

4.     Plaintiffs and Class Members' properties have been damaged due to the presence of hazardous conditions, including radiation and other pollutants, on, in and around their properties resulting in the need for cleanup and remediation.

5.     Mosaic, along with other members of the phosphate industry, has repeatedly assured the public that the presence of mining wastes do not present a health risk and do not result in damage to the properties and nothing to the contrary has been provided by Mosaic, or by anyone else, to the Class Members.

6.     For example, Mosaic has bombarded radio and TV in Central Florida with various advertisements that promote its corporate responsibility practices and extoll the virtues of phosphate mining and its reclamation efforts, including the following advertisement in which Mosaic proclaims itself to be a "global leader" in reclamation:



7.      Similar assurances regarding the safety of phosphate mining and Mosaic's reclamation process have been, and continue to be, echoed by local health and environmental regulators to the public.

8.      Despite these assurances from industry, which is now led by Mosaic, and the government, the presence of radioactive contamination and hazardous substances on the Plaintiffs and Class Members' properties presents a significant health risk to those living and working in, on, and around these properties.

9.     As a result of the assurances and ongoing concealment of the truth by Mosaic and the Owner Defendants, as well as public officials and health and environmental regulators, Plaintiffs, Class Members, and members of the public had no reason to believe that the land they live on presents a significant health risk or otherwise requires remediation.

10.     In unreleased internal agency documents, government scientists noted with significant concern that the use of phosphate mining slag as fill material has resulted in contaminated property with elevated concentrations of a decay products of uranium, including radium-226, in the lands that were formerly mined by Defendant Mosaic and the Class Area's soil.

11.     This radioactive contamination of the land has resulted in increased cancer risks as high as $10^{-2}$.

12.     Radium-226 and other radionuclides found in the Class Area's soil produce gamma radiation that can penetrate the body and increase the risk for a variety of cancers. The half-life of radium-226 is approximately 1600 years so that absent remediation the risk of gamma remediation will remain for thousands of years.

13.     Forms of ionizing radiation are recognized as being human carcinogens by every major human health and regulatory body, including the EPA and the International Agency for Research on Cancer.

14.     Exposure to "low doses" uranium byproducts can increase the risk of numerous cancers, including but not limited to, leukemia, lymphoma and bone and thyroid cancer. Under the Linear No-Threshold (LNT) Model, radiation doses greater than zero will increase the risk of excess cancer or heritable disease in a simple proportionate manner in the low-dose range. In

other words, according to the LNT Model, even very small doses of radiation can still cause cancer or genetic damage.

15.     In addition, the decay of radium creates radon, an odorless, radioactive gas that can increase the risk of lung cancer by its release into the air in the Class Areas and polluting both indoor and outdoor air.  Testing for radon does not detect the presence of gamma radiation, and the absence of elevated levels of radon does not equate to an absence of elevated levels of gamma radiation.

16.     Contamination of the soils with radium-226 leads to high levels of gamma radiation that creates an omnipresent threat to those on or around the contaminated property resulting in unacceptable exposures to residents and children recreating in and around property in Paradise Lakes and Angler's Green.

17.     Gamma radiation creates a constant threat, and while structures such as concrete foundations may degrade or decrease exposure levels within a structure, homes in the Class Areas do not contain significant shielding or foundations and thus these unmitigated levels of gamma radiation create unacceptable exposures to residents and children both inside and around the property in the Class Area.

18.     Mosaic, a company experienced in mining activities, was or should have been familiar with, the risks posed by mining wastes and the radioactive contamination created, disposed of, or enhanced by mining activities on these disturbed phosphate lands.

19.     Upon information and belief, it was known or otherwise foreseeable to Mosaic that the land now known as Angler's Green and Paradise Lakes would be used for residential use when sold for development.

5

20.     Despite its knowledge of the radioactive threat posed by mining wastes, Mosaic improperly managed and disposed of radioactive mining wastes, polluting the lands forming the Class Area, and failed to adequately remediate its phosphate mining lands in such a way that returned the land to its condition prior to mining because the land, which ultimately became various residential properties, including Angler's Green and Paradise Lakes, is contaminated with high levels of radium-226 and its decay products, which include gamma radiation.

21.     Mosaic engaged in strip mining activities on these lands evident from aerial photos of the lands which now form Paradise Lakes and Angler's Green as shown below:



22.     Despite knowledge of the risks posed by their activities, Mosaic sold its mining wastelands with no warning or disclosure, through deed restrictions or other means, of the threat posed by developing this land for future residential uses, thus increasing its profits. In addition, the Owner Defendants wholly failed to disclose and warn Plaintiffs and the Class Members that

6

the lots upon which their homes sit and that they lease on a monthly basis are on formerly mined lands that were not properly remediated.

23.    Although Mosaic took minimal efforts to characterize the radioactive nature of these lands, and despite not having fully characterized the extent of contamination at the property, upon information and belief, Mosaic was, or should have been aware, of the radiation levels on the properties that they mined and sold including the elevated levels of radium-226 and its decay products, which include gamma radiation.

24.    Despite its actual and/or constructive knowledge of the radioactive contamination resulting from its mining and polluting activities and the health and property risks posed by the radiation on this land, and its actual and/or constructive knowledge of elevated radiation levels on this land from the use of phosphate mining slag as fill material in the Paradise Lakes and Angler's Green developments, Mosaic did not inform  subsequent purchasers and lessees of the land or those subsequently purchasing homes, living, or recreating on top of the formerly mined land, including the Class Members, of the radiation and the health and property risks posed by the radiation.

25.    Mosaic and the Owner Defendants never informed Plaintiffs or Class Members about the gamma radiation levels on their property or in the Class Areas or of the presence of, or specialized health risks posed by, the radiation levels on and around their properties and the Class Areas due to its unique history and the nature of historical activities on the property, including, but not limited to Mosaic's use of such land for phosphate mining, its use of slag as fill material in the Class Areas and further contamination of the land, its incomplete and inadequate remediation of the contaminated land.

7

26.     To this day, Mosaic and the Owner Defendants continue to allow this contaminated land to be developed and/or sold and/or leased for residential and commercial uses and continue to fail to disclose the elevated levels of radiation known to be inherent in its contaminated properties or the health risks associated therewith, despite actual or constructive knowledge of its pollution of the land.

27.     Mosaic's mining and pollution of, as well as its failure to properly remediate, these lands has created an ongoing presence of radioactive contamination that has impacted Plaintiffs, the Class Members and the Class Areas properties and deprives Plaintiffs and the Class Members of their free use and enjoyment of their property.  The impact of Mosaic's disposal of, and/or failure to properly remediate such mining waste, impacts the Class Members and the property in the Class Areas (as defined below).

28.     The presence of elevated levels of radiation products has posed, poses, and will continue to damage Plaintiffs' and Class Members' properties and pose a significant health threat to the resident Class Members and to those within the Class Area.

29.     As a result of Mosaic's actions, specifically its mining, polluting and subsequent inadequate remediation activities, mining waste and radioactive substances have entered onto Plaintiffs' and the Class Members' properties and have contaminated their property, air, land, groundwater, dwelling and surrounding environment, thereby causing Plaintiffs and the Class Members to suffer damage to property and personal finance, emotional distress, personal injuries in the form of the increased risk of latent disease, and loss of the use and enjoyment of property and destruction of their community.

30.     As a result of the actions of Mosaic, mining waste and radioactive and hazardous substances at and from Mosaic's mining, disposal, inadequate remediation operations and related

activities have entered onto Plaintiffs' and the Class Members' persons, property, air, land, and dwelling, thereby causing them an increased and significant risk to their health necessitating medical monitoring.

31.     As a result of the actions of Mosaic, mining waste and radioactive and hazardous substances at and from Mosaic's mining, disposal, inadequate remediation operations and related activities have entered onto Plaintiffs' and the Class Members' properties depriving Plaintiffs and the Class Members of their free use and enjoyment of their properties.

32.     As a result of the failures to warn by Mosaic and the Owner Defendants, Plaintiffs and the Class Members purchased homes and leased real property in the Class Area with no knowledge that their homes are located on formerly mined lands with elevated levels of gamma radiation.

## PARTIES

33.     Plaintiffs own, reside or have resided on, property located in the Paradise Lakes and Angler's Green.

34.     Plaintiff Christina Cruz is a resident of the Paradise Lakes community in Polk County, Florida.  Plaintiff Cruz owns the home located within the Class Area at 1125 Mohican Trail, Mulberry, Florida. Plaintiff Cruz pays monthly rent and additional rental fees, commonly referred to as "land dues" for the lot upon which her home sits to the current owner of Paradise Lakes, Yes Companies WFC LLC, and/or its agent for collecting rent. Plaintiff Cruz's current land dues for her lot are $486 per month. Plaintiff Cruz is a putative class representative for the Paradise Lakes Property Damage Subclass and for the Medical Monitoring Class.

35.     Plaintiff Steven Foster is a resident of the Angler's Green community in Polk County, Florida. Plaintiff Foster owns the home located within the Class Areas at 367 Crestwood

Dr., Mulberry, Florida.  Plaintiff Foster pays monthly rent for the lot upon which his home sits to the current owner of Angler's Green, CHC VI Ltd. and/or its agent for collecting rent. Plaintiff Foster's current land dues for his lot are $465 per month. Plaintiff Foster a putative class representative for the Angler's Green Property Damage Subclass and for the Medical Monitoring Class.

36.    Defendant The Mosaic Company ("Mosaic") is a Delaware corporation with its principal place of business at 3033 Campus Drive, Suite E490, Plymouth, Minnesota 55441-2651. At all times relevant hereto and currently, Mosaic was and is authorized to do business, routinely does substantial business, and owns property in the State of Florida. It may be served with process by delivering a copy of the Summons and Complaint to its registered agent, CT Corporation System, at its registered office, 1200 South Pine Island Road, Plantation, Florida 33324.

37.    Mosaic is the successor to International Agricultural Corporation, which was later known as International Minerals and Chemical Corporation and IMC Global. Starting in or around the early and mid-1900's, International Agricultural Corporation purchased and mined the area west of State Route 37 north of the town of Mulberry in Polk County, Florida. This area is believed to have been part of Mosaic's Imperial Lakes mining area. Thus, Mosaic, its predecessors, or wholly owned subsidiaries, mined, disposed of wastes, and improperly remediated the land that became known as the Angler's Green and Paradise Lakes developments in Polk County, Florida.

38.    Defendant Yes Companies WFC, LLC ("Yes") is a Delaware limited liability company, with its principal place of business at 1900 16th Street, Suite 950, Denver, Colorado, that can be served with process through its registered agent, Corporation Service Company, 1201

Hays Street, Tallahassee, Florida 32301. Defendant Yes Companies WFC, LLC currently owns, controls, and possesses the Paradise Lakes community in Polk County, Florida. Defendant Yes Companies WFC, LLC currently charges tenants land dues at a rate of approximately $500 per month.

39.     Defendant CHC VI, Ltd. ("CHC") is a Florida limited partnership, with its principal place of business at 500 S. Florida Ave., Suite 700, Lakeland, Florida 33801, that can be served with process through its registered agent, Benjamin Falk, 500 S. Florida Ave., Suite 700, Lakeland, Florida 33801. Defendant CHC VI, Ltd. currently owns, controls, and possesses the Angler's Green community in Polk County, Florida. Defendant CHC VI, Ltd. currently charges tenants land dues at a rate of approximately $500 per month.

40.     Defendants Mosaic, Yes Companies, and CHC VI are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

41.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds the sum or value of $5 million and the action is between the Class Members who are citizens of the State of Florida on the one hand, and two defendants who are citizens of the States of Delaware, Minnesota, and Colorado on the other hand. The number of members of all proposed plaintiff classes in the aggregate is more than 100.

42.     This Court has personal jurisdiction over Defendants, pursuant to FLA. STAT. § 48.193 because Plaintiffs' and Class Members' claims arise out of Defendants' contacts, acts, and omissions within the State of Florida such that the exercise of such jurisdiction is consistent with due process under the United States Constitution.

11

43.     Venue is appropriate in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the acts which give rise to this Complaint occurred and continue within the District and a substantial part of property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

44.     Plaintiffs and the Class Members have incurred damages as a result of Mosaic's polluting and contamination of their property by the phosphate mining and inadequate remediation of the prior owner of land which subsequently sold the formerly mined land to residential developers, despite knowing that such land under the homes is contaminated with hazardous substances and radioactive materials that expose Plaintiffs and other residents to cancer-causing radiation well in excess of acceptable limits set by the EPA. In turn, Mosaic and the Owner Defendants failed to warn and disclose all of this to Plaintiffs and Class Members.

45.     These hazardous waste materials released radioactive matter that scattered so that persons and properties in the Class Area were and continue to be exposed to hazardous substances.  Plaintiffs, the Class Members and the Class Area properties have been contaminated with hazardous substances, including alpha, gamma, and other forms of radiation.

46.     The presence of radioactive contamination has been and continues to be a source of hazardous substance emissions onto and within the surrounding properties and persons in the Class Areas. The waste contains, and has continuously released into the Class Area, a variety of radioactive and hazardous substances.

**Background of Mosaic's Phosphate Mining in Florida**

47.     Seventy-five percent of the nation's phosphate supply and about 25-percent of the world supply comes from the state of Florida. Mining companies, including Mosaic, mined land

in Polk County to recover phosphate ore, which is rich in radioactive elements, including, but not limited to uranium and its daughter products, including, but not limited to, radium 226, which has a half-life of 1600-years.

48.    Phosphate is removed from the ground and, after removal of the phosphate ore, the remaining slag is enriched in the radioactive elements, thereby enhancing or concentrating the radioactivity of the waste material, including but not limited to clays and sand tailings.

49.    Under Florida law, mining companies are required to restore former mining lands in a manner that returns the land its original condition prior to mining or mining operations. Ch. 378, Fla. Stat. & Ch. 62C-16., Fla. Admin. Code.  Mosaic discharged the waste pollutants by filling in the mines with the highly radioactive material and polluting the land with various radioactive mining wastes, clays, slimes and tailings in violation of Florida common, statutory, and regulatory law.

50.    After polluting the land and inadequately remediating the land, Mosaic sold the land into the stream of commerce with no disclosure of the hazardous nature of the land and the fact that it was unfit for residential use. In many of these developments, including Angler's Green and Paradise Lakes, radioactive contaminants generate gamma radiation and radioactive gases that permeate the ground surface and increase exposures to those people living or recreating on the land.

**Mosaic and the Owner Defendants knew or should have known that the Class Area was contaminated, yet failed to disclose this fact to Plaintiffs and Class Members.**

51.    Mosaic and the Owner Defendants knew or should have known that the land that was mined, polluted, improperly restored and ultimately sold, developed, and leased was contaminated with radioactive materials, and thus that radiation, and radioactive gases, including, but not limited to, radium-226, radon, and gamma rays, permeate the land, soil, water,

13

air, and buildings in the Class Area, increasing exposures to those people that would be living or recreating on that land, yet Mosaic sold the land, and the Owner Defendants charge dues for access to and use of the land, entering it into the stream of commerce and knowingly allowed the land to be developed, to continue to be developed, and to be used for residential purposes.

52.     In fact, studies and other testing done on former phosphate lands of the type that were developed into Angler's Green and Paradise Lakes showed radiation levels several times higher than the EPA's acceptable risk limit.

53.     Radium-226 produces gamma rays that can penetrate the body and increase the risk for a variety of cancers. Exposure to radium-226 can increase the risk of leukemia, lymphoma, and bone cancer, specifically.

54.     In addition, the decay of radium-226 creates radon, an odorless, radioactive gas that can increase the risk of lung cancer by seeping into homes and polluting air inside and outside the home.

55.     Mosaic knew of these risks prior to its sale of the land now comprising Angler's Green and Paradise Lakes and the purchase of homes by Plaintiffs and Class Members, yet Mosaic has never disclosed the risks that people face by living on the lands forming the Class Areas, and chose to sell such land without removing the pollution and remediating the land to return it to its original state. Similarly, the Owner Defendants failed and continue to fail to disclose such risks to Plaintiffs and the Class Members.

56.     Upon information and belief, at least as early as 1975, Mosaic and other mining companies learned of the risks of radioactive contamination of reclaimed former mining lands and of the dangerous levels of exposure that people living and recreating on those contaminated

lands would be subjected to, via non-public reports and testing done by the EPA and other agencies that were shared with the phosphate mining industry, including Mosaic.

57.     In September of 1975, the EPA Administrator informed the Governor of Florida that the EPA had found elevated levels of radiation in buildings constructed on land reclaimed from phosphate mining areas and recommended that due to the presence of radioactive contamination, the construction of new buildings on the contaminated phosphate mining lands be "discouraged".[1]

58.     In 1980, the Department of Natural Resources published an evaluation of disturbed phosphate lands recommending, "[r]adiation levels should be determined if the site might be used for future residential housing after reclamation."[2]

59.     By at least 2003, the EPA had established its "Florida Phosphate Initiative" or "Florida Phosphate Mining Initiative" (the "Phosphate Initiative").

60.     As part of the Phosphate Initiative, the EPA evaluated the risks posed by these contaminated reclaimed mining lands as well as various cleanup alternatives, and, by September of 2003, the EPA had compiled a binder of materials related to the Phosphate Initiative.

61.     The EPA's Phosphate Initiative materials were not shared with or accessible to Plaintiffs or the public, and in fact were marked as exempt from Federal freedom of information laws ("FOIA-exempt").  Upon information and belief, such materials, however, were shared with Mosaic and other mining companies.

---

[1] INDOOR RADIATION EXPOSURE DUE TO RADIUM-226 IN FLORIDA PHOSPHATE LANDS, Office of Radiation Programs, U.S. Environmental Protection Agency (July 1979).

[2] EVALUATION OF PRE-JULY 1, 1975 DISTURBED PHOSPHATE LANDS, Department of Natural Resources Division of Resource Management Bureau of Geology, (August 1980).

Case 8:20-cv-01045-CEH-AEP   Document 1   Filed 05/05/20   Page 16 of 47 PageID 16


62.     Among the materials that the EPA shared with the mining industry, including, upon information and belief, Mosaic, but did not share with Plaintiffs or the public, was the following statement summarizing the agency's main concern:

> The main concern is that **people may be exposed to unsafe levels of radiation in cases where residential dwellings have been constructed over former phosphate mi**nes.  Phosphate mining results in the redistribution of Radium226 (Ra226), a radioactive contaminant of the phosphate ore, from buried deposits to the land surface.  The radioactive contaminant emits gamma radiation, which has been determined to be **a cancer-causing agent**.  The Ra226 eventually degrades into Radon gas which is another known carcinogen.  Preliminary estimates indicate that approximately 40,000 residential dwellings have been built over former phosphate mines in Polk County, Florida.  Many of these homes are believed to have **elevated levels of Ra226 or gamma radiation that exceeds EPA's safe standards**. [3]

63.     At the same time, the phosphate mining industry in Central Florida, including Mosaic, were touting their shoddy remediation of former mining sites as a valuable way to return waste lands to high-value real estate uses for further profit to Mosaic after depleting the mines' obtainable phosphate.

64.     To this day, Mosaic continues to deceive and mislead the public, including Plaintiffs and those owning homes in the Class Areas, as to the presence of high levels of radiation and hazardous substances and the risks posed by long-term exposure to these radiation levels.

65.     In fact, the Florida phosphate mining industry, including Mosaic, pressured the EPA (both directly and through state and/or federal legislators) to cease its investigation into the risks of reclaimed phosphate mining lands.

---

[3] EPA Florida Phosphate Initiative, "Talking Points", July 1, 2003 (emphasis added).

66.     As a result of that pressure from Mosaic and others, in 2014 the EPA officially abandoned its plans for further assessment and potential remediation of the contaminated mining areas under the Federal Superfund program, including those comprising the Angler's Green and Paradise Lakes communities.

67.     Argonne National Laboratories and the Department of Energy ("DOE") were also involved in the assessment of the radiation risks on reclaimed phosphate lands in Central Florida.

68.     The federal government has triggers for remedial action that include levels for gamma radiation detected on property (20 uR/hr) and radium concentration in soil (5 piC/g).

69.     According to the DOE, background levels of gamma radiation generally are approximately 6 uR/hr, and in phosphate mined areas are often in the range of 15-40 uR/hr, however, surveys conducted on reclaimed phosphate mining lands in Central Florida found that gamma radiation levels were as high as ~100 uR/hr.[4]

70.     Based on the DOE's review of the available survey data, they concluded that "[t]he surveys provide evidence that a significant number of residential properties located over former mine areas have the potential to contain radioactivity (Ra-226) at levels exceeding current remedial action guidelines."[5]

71.     As part of their review, the DOE prioritized the surveyed areas based on the "Probable need for additional action" of High (H), Medium (M), and Low (L) - the Imperial Lakes area, just west of Paradise Lakes, as well as other Mosaic parcels, was noted as "H" or highly likely of needing additional action with gamma levels with a high level of 50 uR/hr.[6]

---

[4] "Summary and Impact of Florida Department of Health (FDOH) Historical Radiological Survey Data", Argonne National Laboratory (undated presentation).
[5] *Id.*
[6] Table 1 "Summary of Historical Florida Department of Health Radiological Survey Results for

72.     Based on these EPA and DOE reports and testing results, Mosaic knew, or should have known, by at least 1975 that the land comprising the Class Area communities in Polk County, Florida were unfit for future residential development due to the presence of radioactive materials on, in, and around these properties.

73.     Mosaic knew that these formerly mined lands, which Mosaic polluted and subsequently failed to properly remediate, was comprised of radioactive and other hazardous substances that pose a threat to the health and wellbeing of those people living and recreating on the property as well to the use and enjoyment of those same people, including Plaintiffs and the Class Members.

74.     In fact, as the potential of ionizing radiation to cause cancer has become better understood in the last 10 years, Mosaic became even more aware of the risks Plaintiffs had been, and continued to be, subjected to from its contaminated lands.

75.     Mosaic still does business in Polk County and is well-aware of the current use of its former phosphate mining lands, including for future residential uses and including that use in the Anglers Green and Paradise Lakes communities but continues its deception as to the presence of radiation and the risks it poses.

76.     In 2006, the National Academies of Sciences published its "Health Risks from Exposure to Low Levels of Radiation" which concluded based on its review of available science and epidemiology that there is no threshold for ionizing radiation's cancer-causing abilities. Thus, every incremental dose carries with it an increased risk of disease.[7]

_____

Selected Subdivisions and Property Developments" (undated spreadsheet table).

[7] *See generally*, Committee to Assess Health Risks from Exposure to Low Levels of Ionizing Radiation, National Research Council. Health risks from exposure to low levels of radiation. BEIR VII phase 2. Washington, DC: The National Academies Press; 2006.

77.     Based on the National Academies' determination, experts in the medical, dental, and occupational fields have evaluated the safety of exposure to ionizing radiation for things like medical and dental x-rays with health organizations recommending against dosing patients with radiation unless medically necessary.

78.     But as Mosaic knew, failed to disclose, and continues to fail to disclose, Plaintiffs and resident Class Members living in the Angler's Green and Paradise Lakes communities are exposed to hazardous substances and radioactive materials, including, but not limited to radium-226 and gamma radiation, and thus Plaintiffs and Class Members living, working, and playing in the Class Areas and surrounding residential and commercial developments are exposed to radiation levels that are significantly above background levels.

79.     Plaintiffs and Class Members' homes are not built on concrete foundations and do not have significant shielding, thereby increasing the risks that the surrounding radiation presents along with the imperative for disclosure of those risks.

80.     Exposure to levels of radiation similar to those identified in the Angler's Green and Paradise Lakes communities translates to residents receiving over one chest x-ray per week—with obviously no diagnostic or health purpose whatsoever.

81.     Mosaic, intentionally and/or negligently, concealed and failed to disclose, and continues to conceal and fail to disclose, to Plaintiffs and the Class Members material facts concerning the nature, extent, magnitude, and effects of the exposure of Plaintiffs, the Class Members and/or their property to these toxic and hazardous substances.

82.     Mosaic knew and/or reasonably should have known that Plaintiffs, the Class Members, and/or their personal property would be exposed to hazardous materials and contaminants.   Mosaic knew and understood, and/or reasonably should have known and

19

understood, that its concealment of such information would subject and continue to subject Plaintiffs, the Class Members, and/or their personal property to continued exposure to hazardous materials and contaminants.

83.     Despite this knowledge, Mosaic did not take sufficient measures to prevent the hazardous waste and the property that it comprised from being used in a manner that resulted in harm, or threatened harm, to the property, health, safety, and welfare of Plaintiffs, and did not disclose to Plaintiffs, purchasers, Class Members or the public that the land it improperly restored was contaminated and radioactive and presented a significant risk to those residing on it.

**Plaintiffs and Class Members Left Completely in the Dark**

84.     No one, including Mosaic, the Owner Defendants, or their agents, notified Plaintiffs or Class Members of the significantly elevated presence of radium-226 in and around their homes.

85.     No one, including Mosaic, the Owner Defendants, or their agents, notified Plaintiffs or Class Members of the significantly elevated presence of gamma radiation in and around their homes.

86.     No one, including Mosaic, the Owner Defendants, or their agents, notified Plaintiffs or Class Members of the significantly elevated cancer risks posed by the presence of gamma radiation and other contaminants in and around their properties.

87.     No one, including Mosaic, the Owner Defendants, or their agents, notified Plaintiffs or Class Members of the internal concerns raised by various Federal environmental and health agencies about the use of their properties for residential and/or commercial purposes.

88.     No one, including Mosaic, the Owner Defendants, or their agents, notified Plaintiffs or Class Members of the fact that EPA had considered emergency actions to remove

the threats posed to people living on comparable lands or that their properties had been determined to be highly likely to require further action to be safe for future residential uses.

89.     No one, including Mosaic, the Owner Defendants, or their agents, notified Plaintiffs or Class Members that the EPA had recommended against further development of phosphate lands, such as those used for the Angler's Green and Paradise Lakes communities, for future residential purposes.

90.     Rather, Mosaic, its agents, and the phosphate mining industry have continued to assure Plaintiffs, Class Members and the public in general that there is no threat posed by developing former phosphate lands for future residential use, including those lands comprising the Angler's Green and Paradise Lakes communities.

91.     Plaintiffs and the Class Members reasonably believed that the groundwater, air, land, soil, and natural resources in the Angler's Green and Paradise Lakes communities did not pose any greater health hazard than any other groundwater, air, land, soil, and respective natural resources.

92.     Plaintiffs, the Class Members, and their properties have each been exposed to radioactive and other hazardous materials due to Mosaic's negligence in mining and restoring the Class Areas, and producing, handling, storing, disposing of hazardous substances in the Class Area.

93.     Plaintiffs, the Class Members, and their properties have each been exposed to radioactive and other hazardous materials due to Mosaic's negligence in producing, handling, storing, disposing of hazardous substances in the Class Area and improperly remediating their former phosphate mining lands and selling and/or developing their former phosphate mining

lands, including for future residential use, without the adequate and appropriate testing, sampling, remediation, disclosures, warnings, and other precautions.

94.     Plaintiffs and the Class Members seek redress and damages for property damages, impairment of their property, personal injury in the form of increased risk of latent disease, emotional distress, remediation, cleanup, economic losses, such as loss of property value, and the interference with the use and enjoyment of their property; the prompt cleanup, excavation, treatment, and removal of radioactive wastes and related contaminants from their properties; medical monitoring; and punitive damages and other damages as the result of the carelessness, recklessness, negligence and willful and wanton violation of law by the Mosaic.

95.     Separate and apart from acting negligently, at all relevant times Mosaic and the Owner Defendants caused injury and damages to Plaintiffs, the Class Members, and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

96.     Mosaic and the Owner Defendants, despite their knowledge of the serious health and environmental effects associated with radioactive waste, released, discharged, stored, mishandled, exposed, processed, enhanced, disposed of and dumped mining waste throughout the Class Areas and the surrounding environment, while failing to warn the public in general and the Class Members in particular of the dangers that the historical use of the property posed.

97.     Mosaic and the Owner Defendants, despite their knowledge of the serious health and environmental effects associated with radiation exposure, and despite continued warnings from health and environmental regulators, masked the true extent of contamination and its associated risks, thereby enabling it to avoid taking all appropriate steps to properly remediate these properties.

98.     Mosaic, despite its knowledge of the serious health and environmental effects associated with mining waste exposure, and despite orders and warnings from health and environmental regulators, failed to properly remediate such radiation in the Class Areas.

**LIMITATIONS DOES NOT BAR ANY OF THE CLASS MEMBERS' CLAIMS**

99.     Plaintiffs and Class Members reallege and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

100.    As a result of the acts and omissions of Mosaic, the Owner Defendants, and various public officials and health and environmental regulators, under the discovery rule, Plaintiffs and Class Members could not have reasonably known or have learned through the exercise of reasonable diligence that Plaintiffs' and the Class Member's properties were contaminated with significantly elevated levels of gamma radiation and that those risks were the direct and proximate result of Mosaic's  and the Owner Defendants' acts and omissions. Thus, the applicable limitations periods did not begin to accrue until Plaintiffs and Class Members discovered, or through the exercise of reasonable diligence should have discovered, Mosaic's tortious acts and omissions.

101.    As a result of Mosaic's and the Owner Defendants' actions and omissions, Plaintiffs and Class Members could not reasonably know or have learned through reasonable diligence that Plaintiffs' and the Class Members' homes, and the property surrounding their homes, were contaminated with significantly elevated levels of radiation and that those risks were the direct and proximate result of Mosaic's and the Owner Defendants' acts and omissions.

102.    In addition, any applicable limitations periods are equitably tolled based on the fact that Plaintiffs and Class Members have been misled, lulled into inaction, prevented from asserting their rights, and, thus excusably ignorant of the claims that they now bring in this

23

action. As a result of the acts and omissions of Mosaic, Owner Defendants, and various public officials and health and environmental regulators, all of whom knew about the presence of elevated levels of gamma radiation on Mosaic's land and the Class Areas yet said nothing.

103.    Plaintiffs and the Class Members had no knowledge that Mosaic and the Owner Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by Mosaic and the Owner Defendants, neither Plaintiffs nor the Class Members could have reasonably discovered the wrongdoing at any time prior.

## CLASS ALLEGATIONS

104.    This Class Action is being filed by the Plaintiffs, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and others similarly situated.

105.    Plaintiffs seek to certify the following class, defined as:

> **Property Damage Class ("Property Class")**: Any and all persons that own homes in the Angler's Green and Paradise Lakes communities (collectively, the "Class Area") in Polk County, Florida.

> **Paradise Lakes Property Damage Subclass ("Paradise Class")**: Any and all persons that own homes in the Paradise Lakes community in Polk County, Florida.

> **Angler's Green Property Damage Subclass ("Angler's Class")**: Any and all persons that own homes in the Paradise Lakes community in Polk County, Florida.

> **Medical Monitoring Class**: All persons who ever resided on property located within the Class Area for a minimum of four years.

106.    To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definitions, which are broader and/or narrower in time or scope of exposure.

107.    Excluded from the classes are Mosaics' and Owner Defendants' officers, directors, agents, employees and members of their immediate families; and the judicial

officers to whom this case is assigned, their staff, and the members of their immediate families.

108.     Excluded from the classes are any local, state, or federal government entities.

109.     This Court may maintain these claims as a Class Action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4).

110.     Numerosity – Fed. R. Civ. P. 23(a)(1): The members of each class are so numerous that joinder of all members is impractical.

111.     The number of properties located within the Class Areas exceeds 100 and, therefore, the number of members of each class likely also exceeds 100 people, in satisfaction of Fed. R. Civ. P. 23 (a)(1).

112.     Commonality – Fed. R. Civ. P. 23(a)(2): There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class.  The same conduct by Mosaic has injured or will injure every member of the Class.  The same conduct by the Owner Defendant has injured or will injure every member of the Class.

113.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in satisfaction of Fed. R. Civ. P. 23(a)(2).  Common questions of law and/or fact common to each respective class include, but are not limited to:

       a.     Whether Mosaic discharged (or caused any other condition of pollution) a hazardous substance into the land or water on or under the respective Class Areas;

       b.     Whether Mosaic is strictly liable for discharging (or caused any other condition of pollution) a hazardous substance into the land or water on or under the Class Areas.

c.      Whether Mosaic, through its acts or omissions, is strictly liable for the contamination on, in, and around the Class Areas under Fl. Stat. § 376.313;

d.      Whether Mosaic was negligent in its mining, polluting, contaminating, restoring the Class Areas and handling, storing, using, and disposing the radioactive materials, hazardous substances and related contamination in the Class Areas;

e.      Whether Mosaic, through its acts or omissions, proximately caused property damage, diminution of property values, cleanup costs and health risks due to radioactive materials and related contaminants mined, deposited, released, enhanced, or abandoned in the Class Areas and its failure to properly restore the land in the Class Areas;

f.      Whether Mosaic and Owner Defendants, through their acts or omissions, deprived Class Members of the free and reasonable use and enjoyment of their properties due to the contamination of properties and neighboring properties in the Class Area;

g.      Whether Class Members, through Mosaic's and Owner Defendants' acts, omissions and/or discharges (or other condition of pollution), have suffered damages, including but not limited to property and economic damages; and

h.      Whether, as a proximate result of Mosaic's and Owner Defendants' conduct, Medical Monitoring Class Members are at a significantly increased risk of disease due to exposures to Mosaic's radioactive materials, such that they will benefit from ongoing medical monitoring.

114.    These questions of law and/or fact are common to the respective classes and predominate over any questions affecting only individual Class Members.

115.    Typicality – Fed. R. Civ .P. 23 (a)(3): Plaintiffs' claims are typical of the claims of the respective Classes and the Medical Monitoring Class, as required by Fed. R. Civ. P. 23(a)(3), in that all claims are based upon the same factual and legal theories. The principal issues in this matter involve Mosaic's conduct in wrongfully handling, releasing, discharging (or other condition of pollution), enhancing, storing, transporting, processing, disposing of, and/or failing to remediate, its toxic and hazardous mining wastes and

26

substances and by-products as well as its reckless and negligent decision to develop these improperly remediated phosphate lands into residences where people live, work, and play, which impact all Class Members, and the acts and omissions on the part of Mosaic and the Owner Defendants in failing to warn and disclose all of this to Plaintiffs and Class Members.

116.      Adequacy – Fed. R. Civ. P. 23(a)(4):  Plaintiffs will fairly and adequately represent and protect the interests of the Class Members, as required by Fed. R. Civ. P. 23(a)(4).   Plaintiffs have retained counsel with substantial experience in the prosecution of environmental class actions and lawsuits involving phosphate waste in Florida.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the respective classes, and they have the financial resources to do so.  Neither Plaintiffs nor counsel has any interest adverse to those of the Classes.

117.      Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Mosaic and/or because adjudications respecting individual members of the class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

118.      Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Mosaic and the Owner Defendants have acted or refused to act on grounds generally applicable to all members of the classes, thereby making relief in the form of an injunction requiring the prompt excavation and removal of all radioactive waste and related contaminants from the class properties and because Mosaic has acted or refused to act on grounds generally applicable to all members of classes, thereby making relief in the form of

27

an injunction requiring the prompt excavation and removal of all mining waste, slag and related contaminants from the properties of Plaintiffs and the Class Members appropriate.

119.     In addition, Plaintiffs and the members of the Medical Monitoring Class ("Medical Monitoring Class Members") allege that:

> a.     Plaintiffs and the Medical Monitoring Class Members have each been exposed to toxic and hazardous substances, including radioactive materials, at levels greater than normal background, due to Mosaics' negligence in improperly restoring the land and in handling, storing, use, disposal and/or failure to properly remediate such toxic and hazardous substances.

> b.     The toxic and hazardous substances, including radioactive materials, at issue in this case are proven hazardous substances.

> c.     As a proximate result of the exposure to toxic and hazardous substances, including radioactive materials, Plaintiffs and the Medical Monitoring Class Members have a significantly increased risk of contracting serious latent diseases, including, without limitation, cancer.

> d.     The significant increased risk of contracting serious latent diseases, including, without limitation, cancer and thyroid diseases, makes periodic diagnostic medical examinations, testing and monitoring reasonable and necessary.

> e.     A monitoring procedure exists that makes early detection of these potential diseases possible.

> f.     The prescribed monitoring regiment is different from that normally recommended in the absence of exposure to toxic and hazardous substances.

> g.     The prescribed monitoring regiment is reasonable and appropriate according to contemporary medical and scientific principles.

120.     Plaintiffs and the Class Members have suffered, and will continue to suffer, harm and damages as a result of Mosaic's and the Owner Defendants' unlawful and wrongful conduct, including but not limited to its discharge (or other condition of pollution) of hazardous substances into the land and water of and under the Class Areas.

121.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23 (b)(3). Absent a class action, most members of the classes likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

122.     Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate one or more subclasses pursuant to Fed. R. Civ. P. 23(c)(4).

123.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the class who has suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all members of such class.

124.     No unusual difficulties are likely to be encountered in the management of this action as a class action.

125.     Class certification is also appropriate because Mosaic and the Owner Defendants have acted on grounds generally applicable to the members of the classes, making relief appropriate with respect to the classes.  Specifically, Plaintiffs and the Class Members seek compensation for loss of use and enjoyment of their property, diminution in

property value, removal of contamination from their property, medical monitoring (with respect to the Medical Monitoring Class) and other relief deemed just and proper.

## CAUSES OF ACTION

126.     Plaintiffs and Class Members reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

**Count I:  Strict Liability Pursuant to § 376.313 Fla. Stat. (Against Mosaic)**

127.     Plaintiffs each, individuall, and on behalf of the "Property Class," file this claim against Mosaic.

128.     Mosaic's wrongful acts and omissions in releasing and discharging (or other conditions of pollution) toxic pollutants and contaminants onto the lands and water of the state of Florida in general, and the Class Areas in particular, as is alleged in more detail above, was in violation of various environmental statutes in the State of Florida, including but not limited to the following:

a.     Discharging (or other condition of pollution) of any pollutants or hazardous substances into or upon land (or water) in violation of § 376.302(1)(a) Fla. St.; and

b.     Failure to immediately remediate, contain, remove and abate the discharges in violation of § 376.305(1) Fla. St.

129.     Plaintiffs are each a "person[s]" who may bring a cause of action for damages under § 376.313.

130.     Plaintiffs have alleged damages resulting from Mosaic's discharge of hazardous substances onto their land, as those terms are defined in Fla. Stat. §§ 376.30 – 376.319.

131.     Mosaic is strictly liable for damages to Plaintiffs and the "Property Class" Members resulting from such discharges (or other conditions of pollution) covered by §§ 376.30 – 376.319 Fla. St., and Plaintiffs and the "Property Class" Members are not required to plead or prove negligence in any form or manner, pursuant to § 376.313 Fla. St., because it is sufficient to plead and prove, as set forth in various paragraphs above, that the prohibited discharges or other polluting conditions occurred.

132.     Mosaic's acts and omissions violate numerous Department of Environmental Protection ("DEP") standards as well as federal standards adopted by the DEP including, *inter alia*, Chapters 62-730, 62-777, 62-780, 62C-16, and/or 64E-5 of the Florida Administrative Code, Part II of Chapter 378, Florida Statutes, 40 C.F.R. §6262.11, 42 U.S.C. § 6925(a), 40 C.F.R. Part 264, Subparts A-G, K, and CC, and/or 40 C.F.R. Part 268 (collectively the "Applicable Legal Standards").

**Count II: Negligence and Negligence Per Se (Against Mosaic)**

133.     Plaintiffs each individually, and on behalf of the "Property Class" file this claim against Mosaic.

134.     At all relevant times hereto, Mosaic owed to Plaintiffs and the "Property Class" Members who foreseeably could be injured by its negligence, a duty to exercise reasonable care in not releasing, enhancing, remediating, discharging (or other conditions of pollution), concentrating, freeing, or stockpiling toxic contaminants, including radioactive materials, that it knew, or should have known, could result in damage and injury to Plaintiffs, Class Members and their property.

135.    Mosaic also owed a duty of care to Plaintiffs and the "Property Class" Members to exercise reasonable care in the development of its phosphate lands for future residential uses, to include living, working, and playing.

136.    Mosaic further owed a duty to exercise reasonable care to disclose the presence of these hazardous substances, including radioactive materials, the risks that they posed, and what Mosaic knew about the presence and risks of these contaminants as found on its phosphate lands.

137.    These duties to exercise reasonable care arose out of the common law of Florida, as well as relevant Federal and state environmental statutes and regulations, including any and all Applicable Legal Standards, referenced above.

138.    Mosaic breached its duty, over a period of years, in at least the following respects:

a.    Mosaic polluted the land with highly radioactive contaminants creating an unsafe environment for residential use due to the presence of gamma radiation and other forms of radiation.

b.    Mosaic failed to adequately remediate its mining lands in a manner that returned the land to its original condition prior to mining operations, as required by Florida common law, statutes, and regulations.

c.    Mosaic failed to remediate the land and restore it to its un-polluted condition, but rather further polluted the land making it an ongoing threat to those thereon.

d.    Mosaic further polluted, contaminated, and increased the hazardous nature of this land by disposing of radioactive wastes, soils, clays, and slimes into and onto the land, air, soil, water, groundwater and property in the Class Areas, increasing the hazards that it poses to Plaintiffs, Class Members, and to the public.

e.     Mosaic acted with knowledge of the widespread presence of hazardous substances, including radioactive materials, on the former phosphate lands that became lands forming the Class Areas along with the knowledge of the health and environmental risks that this radiation posed for those engaged in residential activities on these lands, and despite that it continued selling and/or developing and ultimately profiting by putting these lands into the stream of commerce ultimately for use as residential properties.

f.     Failing to safely and properly remediate, remove and dispose the hazardous substances, including radioactive materials.

g.     Developing and/or selling its phosphate lands for future residential uses, including living, working, and playing, despite internal agency, public health, and other non-public recommendations to the contrary.

h.     Developing and/or selling its phosphate lands for future residential uses, including living, working, and playing, without the appropriate and adequate sampling, testing, or assessment to determine the suitability of these lands for such uses.

i.     Developing and/or selling its phosphate lands for future residential uses, including living, working, and playing, without the appropriate and adequate remediation, containment, or other handling, including, but not limited to, bringing in clean fill dirt, that may have made these properties suitable for such uses.

j.     Disposing of hazardous wastes and other hazardous substances into the land, water, air, soil, water and groundwater in the Class Areas.

k.     Failing to safely and properly remediate and remove and dispose of hazardous substances, including radioactive materials from the Class Areas.

33

l.      Putting these properties into the stream of commerce that were, are, and will continue to be unfit for future residential uses due to the high levels of radioactive materials on, in, or around these properties.

m.      Failing to warn Plaintiffs and Class Members of the contamination on, in, and around their properties, and the risks that it posed to them and to their families, and the likelihood that they were being exposed to carcinogenic radiation.

139.    As a result of Defendants' acts and omissions, as further detailed above, extensive contamination and hazardous substances have existed, exist and will continue to exist and have been documented in the Paradise Lakes and Angler's Green.

140.    As a result of Defendants' misconduct as set forth herein, Plaintiffs and the "Property Class" Members have suffered and continue to suffer damages, including, but not limited to, the significant property damage, impairment of their property, improperly inflated monthly rent expenses, loss of value to their property and the loss of the use and enjoyment of their property and exposure to radiation leading to an increased risk of serious latent injury/illness.

141.    At all relevant times, Defendants caused injury, impairment of property, property damage and other damages to Plaintiffs and the "Property Class" Members and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

142.    Mosaic, despite its knowledge of the serious health and environmental effects associated with exposure to such hazardous substances, including radioactive materials, and having contaminated the lands with its mining and disposal activities, inadequately remediated phosphate lands with knowledge that they would be developed for residential use despite being

unfit for residential purposes due to the presence of elevated levels of contamination in the form of radiation in, on, and around the land comprising the Angler's Green and Paradise Lakes and subsequently failed to warn Plaintiffs, the "Property Class" Members, and the public of the dangers such activities posed.

143.    Mosaic, despite its knowledge of the serious health and environmental effects associated with radiation exposure masked the true extent of contamination, avoided taking all appropriate steps to properly remediate the hazardous substances and levels of radiation in, on, and around the Angler's Green and Paradise Lakes or to remediate and mitigate dangers created by its development of radioactive phosphate lands for residential use.

144.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiffs and the "Property Class" Members properties have been and will continue to be contaminated and unfit for residential uses.

145.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiffs and the "Property Class" Members currently suffer ongoing radiation exposure leading to an increased risk of serious latent disease, including a number of types of cancer that are associated with exposure to ionizing radiation.

146.    As a direct and proximate result of Mosaic's wrongful acts and omissions, Plaintiffs and the "Property Class" Members currently suffer property damage, diminution in the value of their property, improperly inflated rent expenses, cleanup costs, loss of use and enjoyment of their property and destruction of their community.

147.    Because Mosaic's acts and omissions violated the Applicable Legal Standards, referenced above, in addition to breaching the common law duty of care, Mosaic's acts and omissions constitute negligence per se.

35

148.    Plaintiffs and the "Property Class" Members seek to recover against Defendants for property damage, including diminution of property values, improperly inflated rent expenses, the cost of remediation of properties, as well as the cost of periodic medical examinations necessary to detect the onset of physical harm that may be caused by radioactive contaminants on and around Plaintiffs' property.

**Count III: Negligence and Premises Liability (Against Owner Defendants)**

149.    Christina Cruz individually and on behalf of the "Paradise Subclass" makes this claim against Yes.  Steven Foster individually and on behalf of the "Anglers Subclass" makes this claim against CHC.

150.    Yes and CHC owed a duty to the Plaintiffs and the "Paradise Subclass" and the "Anglers Subclass" respectively to exercise reasonable care in purchasing, developing, and charging dues for its land for residential use such that it was free from environmental contamination, such as elevated alpha and gamma radiation from uranium and radium-226.

151.    The Owner Defendants further had a duty to warn and disclose to its residents the presence of these hazardous substances, including radioactive materials, the risks that they posed, and what the Owner Defendants knew, or should have known, about the presence and risks of these contaminants on land that they owned, possessed, controlled, and leased to tenants.

152.    The Owner Defendants are liable in tort to their respective tenants for injuries resulting from latent dangerous conditions of which the Owners knew, or should have known, existed on the premises when the Owners delivered possession without appropriate warnings.

153.    The Owner Defendants breached their duties to exercise reasonable care by purchasing, developing, and charging dues for its land for residential use despite the fact that the land is contaminated with gamma radiation from uranium and radium-226. The Owner

Defendants further breached their duties to warn by failing to disclose to Plaintiffs and Class Members the presence of these hazardous substances, including radioactive materials, the risks that they posed, and what the Owner Defendants knew, or should have known, about the presence and risks of these contaminants on land that they owned, possessed, controlled, and leased to tenants.

154.     As a result of the Owner Defendants' misconduct as set forth herein, Plaintiffs and the Subclass Members have suffered and continue to suffer damages, including, but not limited to, the significant property damage, impairment of their property, improperly inflated dues,  expenses, loss of value to their property and the loss of the use and enjoyment of their property and exposure to radiation leading to an increased risk of serious latent injury/illness.

155.     At all relevant times, the Owner Defendants caused injury, impairment of property, property damage and other damages to Plaintiffs and the Subclass Members and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

156.     As a direct and proximate result of the Owner Defendants' wrongful acts and omissions, Plaintiffs and Subclass Members properties have been and will continue to be contaminated and unfit for residential uses.

157.     As a direct and proximate result of the Owner Defendants' wrongful acts and omissions, Plaintiffs and the Subclass Members currently suffer ongoing radiation exposure leading to an increased risk of serious latent disease, including a number of types of cancer that are associated with exposure to ionizing radiation.

158.    As a direct and proximate result of the Owner Defendants' wrongful acts and omissions, Plaintiffs and the Subclasses they seek to represent each currently suffer property damage, diminution in the value of their personal property including their homes, improperly inflated rent expenses, cleanup costs, loss of use and enjoyment of their property and destruction of their community.

159.    Plaintiffs, and each Subclasses they individually seek to represent, seek to recover against the Owner Defendants for property damage, including diminution of property values, improperly inflated monthly dues and other expenses, the cost of remediation of properties, as well as the cost of periodic medical examinations necessary to detect the onset of physical harm that may be caused by radioactive contaminants on and around Plaintiffs' property.

**Count IV: Breach of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Against All Defendants)**

160.    Christina Cruz individually and on behalf of the "Property Class" and the "Paradise Subclass" makes this claim against Mosaic and Yes.  Steven Foster individually and on behalf of the "Property Class and the "Anglers Subclass" makes this claim against Mosaic and CHC.

161.    The FDUTPA is a remedial statute designed to protect consumers. A remedial statute is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good, as well as giving a party a mode of remedy for a wrong, where he or she had none, or a different one, before. Pursuant to the FDUTPA, "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." § 501.204, Fla. Stat.

162.    At least in part, Mosaic's trade or commerce includes acquiring land, mining land for phosphate, ostensibly "reclaiming" the land, and once mining operations are completed,

38

selling some of the formerly mined land. By mining land, improperly and inadequately "reclaiming" the land without taking any remedial measures to reduce the elevated radiation levels from the uranium and radium-226 associated with the phosphate mining process, and then selling the land for, among others, residential development, Mosaic has committed deceptive and unfair acts in violation of the FDUTPA, Fla. Stat §§ 501.201-213.

163.   The Owner Defendants' trade or commerce includes purchasing land, that they may or may not have developed, for charging dues for home residential to residential homeowners.  By purchasing, developing, and/or charging monthly dues to tenants formerly mined phosphate lands  contaminated with elevated levels of gamma radiation and then subsequently failing to warn and disclose to Plaintiffs and Class and Subclass Members that their neighborhoods were built on former phosphate mines that were not properly reclaimed, as well as the presence of the elevated radiation levels and the risks that they posed, the Owner Defendants have committed deceptive and unfair acts in violation of the FDUTPA, Fla. Stat §§ 501.201-213.

164.   Defendants' unlawful acts and omissions constitute unfair practices because they offend established public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendants' unlawful acts and omissions constitute deceptive unfair practices because they were likely to deceive or mislead a consumer acting reasonably in the same circumstances.

165.   Defendants' unfair or deceptive acts or practices caused actual damages to Plaintiffs and Class and Subclass Members.

166.   Defendants' conduct was the same as to all Class and Subclass Members such that different representations were not made to different class members and no class members were

aware of the deceptive conduct. Thus, Mosaic improperly and inadequately failed to properly remediate the entire class area for elevated gamma radiation levels before selling the land for residential use, and the Owner Defendants charged monthly dues for the use of residential lots with elevated gamma radiation levels to Plaintiffs and Class and Subclass Members (Mosaic to the "Property Class," CHC to the "Anglers Subclass" and Yes to the "Paradise Subclass")  and failed to disclose to Plaintiffs and Class and Subclass Members that the Plaintiffs' and Class and Subclass Members' communities were built on formerly mined lands that contained elevated levels of gamma radiation.

167.    Plaintiffs and Class and Subclass Members have sustained actual damages as a direct and proximate result of Defendants' unfair or deceptive acts or practices, including, without limitation, diminution in value, the value between what was promised and what was delivered, out of pocket losses, benefit of the bargain losses, and/or the total price paid for a valueless good or service.

168.    In addition, Plaintiffs and Class and Subclass Members are entitled to an award of attorneys' fees pursuant to § 501.2105, Fla. Stat.

**Count V: Breach of Implied Warranties (Against Owner Defendants)**

169.    Christina Cruz individually and on behalf of the "Paradise Subclass" makes this claim against Yes.  Steven Foster individually and on behalf of the "Anglers Subclass" makes this claim against CHC.

170.    Under Florida law, the developer, builder, and seller/Owner of residential real estate are in the best position to have knowledge of, discover, and prevent defects in connection with the design, development, and construction of residential real estate. This is particularly applicable where the residential real estate is within a mass development of many homes.

171.    Plaintiffs and the subclass Members entered into valid and enforceable contracts (CHC with the "Angler's Subclass" and Yes with the "Paradise Subclass") with the Owner Defendants for the residential lots upon which their homes sit and for which they pay monthly dues. Implied under these contracts are the implied warranties of merchantability, fitness, and habitability (the "Implied Warranties").

172.    The ground and soil that support and form the very foundation upon which Plaintiffs' and the subclass Members' homes sit is contaminated with uranium and radium-226 caused by Mosaic's phosphate mining operations. This contamination causes ionizing gamma rays to emanate from the ground into the air inside and around Plaintiffs' and the Class Members' homes. This is particularly problematic where, as here, the homes do not have cement or concrete slab foundations that can shield occupants from radiation. Rather, Plaintiffs' and Class Members' homes are built upon piers, blocks, and/or crawlspaces.

173.    As a result, the Owner Defendants have breached the Implied Warranties because the premises in the Class Area do not meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

174.    The Owner Defendants have also breached the Implied Warranties because Plaintiffs' and the subclass Members' residences are rendered not reasonably fit for the ordinary or general purpose intended.

175.    As a direct and proximate result of the Owner Defendants' wrongful acts and omissions, Plaintiffs and Class Members properties have been and will continue to be contaminated and unfit for residential uses.

176.    As a direct and proximate result of the Owner Defendants' wrongful acts and omissions, Plaintiffs and each of the Subclass Members currently suffer ongoing radiation

exposure leading to an increased risk of serious latent disease, including a number of types of cancer that are associated with exposure to ionizing radiation.

177.   As a direct and proximate result of the Owner Defendants' wrongful acts and omissions, Plaintiffs and the Subclass Members currently suffer property damage, diminution in the value of their property, improperly inflated rent expenses, cleanup costs, loss of use and enjoyment of their property and destruction of their community.

178.   Plaintiffs and the Subclass Members seek to recover against Defendants for property damage, including diminution of property values, lost use and enjoyment, improperly inflated rent expenses, the cost of remediation of properties, as well as the cost of periodic medical examinations necessary to detect the onset of physical harm that may be caused by radioactive contaminants on and around Plaintiffs' property.

**Count VI: Medical Monitoring (Against All Defendants)**

179.   Plaintiffs and the Medical Monitoring Class Members assert Florida law of equity claims for medical monitoring against Defendants, arising from their wrongful acts, negligence, breach of implied warranties, and/or violations of Chapter 376 Florida Statutes, as each is further detailed above, in their: phosphate mining operations and production; inadequate remediation and restoration of the former mining lands; releasing, handling, restoring, discharging (or other conditions of pollution), concentrating, freeing, disposing of and/or stockpiling hazardous substances, including radioactive materials,  including, but not limited to, gamma radiation  on, in and/or around the property located in the Class Areas; the use of such contaminated land for developing and selling residential and commercial properties; the inadequate and improper development of the land for residential use; and the failure to warn its lessees of defects and contamination that the Owners Defendants knew or should have known about.

180.     As a direct and proximate result of Defendants' wrongful acts, negligence, breach of implied warranties, and/or violations of Chapter 376 Florida Statute, as each is further detailed above, Plaintiffs and the Medical Monitoring Class Members were exposed to hazardous substances, including but not limited to, gamma radiation and radioactive materials, at greater than normal background levels.

181.     As a direct and proximate result of Defendants' wrongful acts, negligence, breach of implied warranties, and/or violations of Chapter 376 Florida Statute, as each is further detailed above, and Plaintiffs and the Medical Monitoring Class Members exposure to hazardous substances, including but not limited to, gamma radiation and radioactive materials at greater than normal background levels, Plaintiffs and the Medical Monitoring Class Members have a significantly increased risk of contracting serious latent diseases, including, but not limited to, a number of types of cancer, including, but not limited to, leukemia, lymphoma, bone and thyroid cancer as well as thyroid disorders that are associated with exposure to such hazardous substances such as uranium byproducts.   The significantly increased risks of serious latent disease, including, but not limited to a number of types of cancer and thyroid disorders, makes periodic diagnostic medical examinations reasonable and necessary.

182.     A medical monitoring program is necessary for early detection and treatment of the aforementioned latent conditions including cancer and thyroid disorders, and an easily administered, cost effective monitoring program exists.

183.     The Plaintiffs seek for the Court to exercise its equitable powers to create, supervise, and implement (or cause to be created, supervised and implemented), and for the Court to order Defendants to fund, an appropriate medical monitoring plan that provides routine medical testing, monitoring and study of the Plaintiffs and each Medical Monitoring Class

Member, for the remainder of each Plaintiffs' and Medical Monitoring Class Member's life.

184.    The Plaintiffs and the Medical Monitoring Class Members seek for such medical monitoring program to institute comprehensive and appropriate diagnostic tests for the early detection and diagnosis of cancers and thyroid disorders and other serious latent diseases. The diagnostic tests may include, without limitation or exhaustion, periodic physical examinations, clinical laboratory tests for appropriate biological markers, electrocardiograms, echocardiography, radionuclide cardiac imaging, CT Scans, MRI Scans, vascular ultra sound, lung perfusion scans, and biopsy and such other tests as to maximize the Plaintiffs and the Medical Monitoring Class Members' opportunity for early detection of such latent diseases, including cancer and thyroid disorders.

185.    The medical monitoring program is reasonable and necessary as a result of Plaintiffs and the Medical Monitoring Class Members increased risk of serious latent diseases, including cancer and thyroid disorders.

186.    The Plaintiffs' and the Medical Monitoring Class Members' increased risk of serious latent diseases, including cancer and thyroid disorders necessitates a more comprehensive medical monitoring program than the ordinary medical screening generally practiced, recommended or required for the unexposed population, thus the required regimen is different from that recommended in the absence of the Plaintiffs' and the Medical Monitoring Class Members' exposure.

187.    The medical monitoring program is reasonably necessary according to contemporary scientific principles, medical literature and expert opinion, as early detection of cancers and thyroid disorders improves prognoses and overall treatment.  Cancer and thyroid diseases often go undiagnosed and, as a result untreated, while those suffering from them can

benefit from medical treatment.

188.    Florida recognizes the Plaintiffs and the Medical Monitoring Class Members' to medical monitoring as a cognizable cause of action, *Petito vs. A.H. Robbins, Co., Inc.*, 750 So2d 103 (3rd DCA), despite the absence of the manifestations of a present physical injury or symptomatic disease.

### JURY TRIAL DEMAND AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests a trial by jury and that the Court enter an order or judgment against Defendants as follows:

A.      Enter an Order pursuant to Federal Rule 23 permitting this action to be maintained as a class action, Plaintiffs as the representative of the Medical Monitoring and Property Classes and the Paradise Subclass and Anglers Subclass appointing Plaintiffs' counsel as counsel for such classes and subclasses;

B.      Enter judgment against Defendants for compensatory damages; the prompt testing, assessment, excavation and removal of all radioactive wastes and related contaminants to levels otherwise representative of background levels from Plaintiffs and Class and Subclass Members' properties; the cost of periodic medical examinations necessary to detect the onset of physical harm, including, serious latent injury and/or disease that may be caused by radioactive contaminants on and around Plaintiffs' property; attorney's fees, costs of suit as provided for by law; and such other relief as the Court may deem just and proper in favor of Plaintiffs and the Class and Subclass Members against Defendants for loss of property value, improperly inflated rent expenses, and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, expert fees and costs of this suit;

C.      Enter an order granting a medical monitoring program, funded by Defendants;

D.     Enter an injunction requiring Mosaic to promptly and completely remediate radiation levels to, or below, background levels from the Plaintiffs' and Class Members' properties;

E.     Award prejudgment and post-judgment interest as provided by law;

F.     Award punitive damages; and

G.     Such other relief as this Court deems necessary, just and proper.

Plaintiffs demands a trial by jury as to all claims so triable in this action.

Dated:  May 5, 2020

By:     _____/s/ *Neal O'Toole*_____
        Neal O'Toole, Esq.
        **O'Toole Law Group**
        310 E. Main Street
        Bartow, FL  33830
        Telephone: (863) 533-5525
        notoole@otoolepa.com

        W. Mark Lanier, Esq.
        (*pro hac vice* to be filed)
        Richard Meadow, Esq.
        (*pro hac vice* to be filed)
        Chris Gadoury, Esq.
        (*pro hac vice* to be filed)
        **The Lanier Law Firm, P.C.**
        10940 W. Sam Houston Pkwy N., Suite 100
        Houston, Texas 77064
        Telephone: (713) 659-5200
        wml@lanierlawfirm.com
        Richard.Meadow@lanierlawfirm.com
        Chris.Gadoury@lanierlawfirm.com

Christopher T. Nidel, Esq.
(*pro hac vice* to be filed)
Jonathan Nace, Esq.
(*pro hac vice* to be filed)
**Nidel & Nace, P.L.L.C.**
2201 Wisconsin Ave. NW, Suite 200
Washington, D.C. 20007
Telephone:  (202) 780-5153
chris@nidellaw.com
jon@nidellaw.com

Steven J. German, Esq.
(p*ro hac vice* to be filed)
Joel M. Rubenstein, Esq.
(p*ro hac vice* to be filed)
**German Rubenstein LLP**
19 West 44th Street, Suite 1500
New York, NY 10036
Telephone: (212) 704-2020
sgerman@germanrubenstein.com
jrubenstein@germanrubenstein.com